UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CRAIG L. BLAND,<br>    *Plaintiff,* | )<br>)<br>)<br>) | CIVIL NO. 3:16-cv-1406 (KAD) |
| v. | )<br>)<br>)<br>) | |
| EMMANUEL FRANCESCHI, RICHARD<br>BUSH, CHRISTOPHER N. FONTAINE,<br>THEODORE HOLMES, ANGELA<br>JACKSON, S. JOHAR NAQVI, CARLOS<br>PADRO, MALGORZATA ZUKOWSKA,<br>    *Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>) | January 29, 2019 |

**MEMORANDUM OF DECISION RE:
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 88)**

Kari A. Dooley, United States District Judge

**Preliminary Statement of the Case**

    The Plaintiff, Craig L. Bland, formerly in the custody of the Connecticut Department of Corrections ("DOC"), commenced this civil rights action pursuant to Title 42, U.S.C. § 1983. He brings his claims against Correctional Managed Health Care employees Dr. Naqvi, Health Services Administrator Bush, Head Correctional Nurse Zukowska, Correctional Nurse Jackson and former Correctional Nurse Fontaine. He also brings claims against Department of Correction employees former Lieutenant Holmes, Lieutenant Padro and Correctional Officer Franceschi. The Plaintiff alleges that all defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. The Defendants filed a motion for summary judgment, to which the Plaintiff objected. The Court heard oral argument on January 16, 2019. For the following reasons, the motion is GRANTED as to all Defendants.

**Standard of Review**

The standard under which the Court reviews motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's inquiry focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Once the movant meets his burden, the nonmoving party must set forth "'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Wright*, 554 F.3d at 266; *accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). However, until the moving party comes forward with evidence that would establish his entitlement to judgment as a matter of law, the non-moving party is under no obligation to produce any evidence. *Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir. 2001).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50. Indeed, summary judgment is evaluated in the same fashion as a motion for a directed verdict. *Id.* at 250. The Supreme Court has "noted that the 'genuine issue' summary judgment standard is 'very close' to the 'reasonable jury' directed verdict standard: The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the

evidence that has been admitted." *Id*. at 251. "In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 252–53.

However, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249. "[C]ourts may not make credibility determinations or weigh the evidence when confronted with a motion for summary judgment. All evidence presented by the nonmoving party must be taken as true, and all inferences must be construed in a light most favorable to the nonmoving party." *Catanzaro v. Weiden,* 140 F.3d 91, 93–94 (2d Cir. 1998), *on reh'g*, 188 F.3d 56 (2d Cir. 1999) (citing *United States v. Diebold,* 369 U.S. 654, 655 (1962)). In sum, "where the facts specifically averred by [the nonmovant] contradict facts specifically averred by the movant, the motion must be denied." *Lujan,* 497 U.S. at 888.

**Facts**

The following facts are largely undisputed.

On November 1, 2015, the Plaintiff was incarcerated at the New Haven Correctional Center. At approximately 4:00 a.m. the Plaintiff was escorted from the restricted housing unit to the medical unit. At the medical unit, Defendant Nurse Jackson, believing the Plaintiff to be an inmate named Murphy, advised the Plaintiff that she was going to administer the last dose of his medication. The Plaintiff did not advise Nurse Jackson that he was not due to have any medication. The Plaintiff cooperated while Nurse Jackson opened two suboxone packets and poured the medicine into the Plaintiff's mouth, under his tongue. At that point, the Plaintiff told Nurse Jackson that he was not scheduled to receive any medication, let alone suboxone. Upon learning that she had mistakenly given the Plaintiff the suboxone, Nurse Jackson immediately notified her

3

supervisor, Defendant Head Nurse Zukowska. Nurse Jackson was apologetic to the Plaintiff. The Plaintiff admits that Nurse Jackson "did not mistreat the plaintiff, answered his questions, notified her supervisor of what happened and followed up with the plaintiff later that morning." The Plaintiff admits that the administration of the suboxone to the wrong inmate was unintentional.

Upon learning of what had occurred, Nurse Zukowska spoke with the Plaintiff and explained that he had been given suboxone by accident and the protocol that she was required to follow. Consistent with that protocol, she contacted the Health Services Administrator, the custody supervisor, as well as the on-call doctor, Defendant Dr. Naqvi. She also reviewed the Plaintiff's file to check for any known allergies. Nurse Zukowska told Dr. Naqvi what had happened and shared the content of the Plaintiff's medical file with him. Dr. Naqvi determined that the Plaintiff did not need outside medical treatment. Later that same morning, Nurse Zukowska visited the Plaintiff in his housing unit. While speaking with him, she requested to take his vital signs. He refused, telling her he wanted to see a "real doctor." She advised him that if his vital signs were abnormal, she would take him to the doctor. He refused to have his vital signs taken.

Although the facts set forth above are largely undisputed, there are numerous allegations contained in the Plaintiff's complaint for which there is competing evidence. Principally, the Plaintiff alleges that after he returned to his cell following the accidental suboxone administration, he became visibly and seriously ill and that he injured his head when he fainted from the side effects. He claims to have repeatedly sought help from the other named defendants, to include officers and supervisors who work on his cell block, to no avail. Admittedly, the Plaintiff was next seen in the medical unit on November 3, 2015. Notwithstanding, he claims the Defendants were deliberately indifferent to his serious medical condition in violation of his Eighth Amendment rights. The Defendants deny each of these allegations and have supported the motion for summary

4

judgment with multiple affidavits, prison log books, and other records which refute, they claim conclusively, the Plaintiff's affidavit and other materials submitted by the Plaintiff in opposition to the Defendants' motion.

Additional facts will be set forth as necessary.

**Discussion**

The Defendants move for summary judgment on three grounds: (1) the Plaintiff failed to exhaust his administrative remedies with respect to all defendants except Nurse Jackson and Nurse Zukowska, before commencing this action, (2) all Defendants are protected by qualified immunity, and 3) the Plaintiff cannot establish his deliberate indifference claim.

*Exhaustion of Administrative Remedies*

Additional undisputed or admitted facts are set forth. The DOC's Inmate Administrative Remedies are set forth in Administrative Directive 9.6. ("AD 9.6"). AD 9.6 became effective August 15, 2013 and was in effect during the time relevant to the Plaintiff's claims. The type of remedy available to an inmate depends on the nature of the condition or decision at issue. The Inmate Grievance Procedure is the designated administrative remedy for all matters regarding conditions of confinement, such as placement on in-cell restraints or the refusal to provide hygiene items. This procedure addresses grievances against custodial correctional officers. However, if an inmate is seeking a remedy related to medical or mental health claims, he must submit a request for a Health Services Review. A Health Services Review may be used to address concerns regarding diagnosis and treatment, or administrative issues. An inmate seeking review of a diagnosis or treatment issue is directed to seek an informal resolution prior to filing a formal request for a Health Services Review. If the issue is not satisfactorily resolved informally, the

inmate is then directed to file an Inmate Administrative Remedy Form seeking a Health Services Review.

If an informal resolution is unsuccessful, the Health Services Review Coordinator is required to schedule a Health Services Review Appointment with a medical provider as soon as possible. If the medical provider concludes that the existing diagnosis or treatment was appropriate, the inmate is considered to have exhausted his health services review remedy.

Here, the Plaintiff filed an Inmate Administrative Remedy Form ("CN 9602 form"), dated November 27, 2015. Therein the Plaintiff checked the box "requesting a Health Services Review" of "Diagnosis/Treatment," and specifically names "Nurse Angie" (Defendant Nurse Jackson), "Nurse Margo" (Defendant Nurse Zukowska), and "C/O Franceschi" (Defendant Emmanuel Franceschi). However, Defendant Franceschi is a custodial correctional officer, not medical personnel, and so cannot be grieved through a CN 9602 form which seeks a Health Services Review.

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). To properly exhaust a claim, a prisoner must comply with the prison grievance procedures, including utilizing

each step of the administrative appeal process. *Snyder v. Whittier*, 428 Fed.Appx. 89, 91 (2d Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)). "An 'untimely or otherwise procedurally defective administrative grievance' ... does not constitute proper exhaustion." *Id.* (quoting *Woodford v. Ngo,* 548 US. 81, 83-84 (2006)). Alleged special circumstances will not relieve an inmate of his or her obligation to adhere to the exhaustion requirement. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An inmate's failure to exhaust administrative remedies is only excusable if remedies are in fact unavailable. *Id.*

Here, the only effort the Plaintiff made to seek administrative remedies was the submission of the CN 9602 form. In assessing whether the submission of the CN 9602 form is sufficient to meet the exhaustion requirement, three categories of Defendants emerge: 1) those properly named in the form; 2) those improperly named in the form; and 3) those omitted or otherwise not named in the form. Defendants Jackson and Zukowska, medical personnel appropriately listed on a Health Services Review form, fall into the first category. The Plaintiff contends therefore that he satisfied the exhaustion requirement with respect to these Defendants. Defendants Jackson and Zukowska do not challenge this assertion. The Plaintiff's claims against Defendants Jackson and Zukowska are therefore not precluded on this basis.

However, Defendant Franceschi, a corrections officer, is *improperly* listed on the CN 9602 form requesting a "Health Services Review." The form allows inmates to identify whether they are filing a "grievance" or seeking a "Health Services Review." The form is clear that they cannot do both with a single form. Because the Plaintiff did not comply with these "critical procedural rules," *Woodford*, 548 U.S. at 93, his attempted grievance against Franceschi is fatally deficient. The Plaintiff did not therefore exhaust his administrative remedies as to Defendant Franceschi by filing the CN 9602 form.

7

Finally, the remaining Defendants, Bush, Fontaine, Holmes, Padro and Naqvi,[1] a combination of custodial and medical personnel, are *not* listed on the CN 9602 form at all. The Plaintiff did not file any grievance against these defendants or otherwise seek any administrative remedies with respect to these Defendants. Appropriate grievance and review procedures were available to the Plaintiff, but he simply did not utilize them. As a result, he has failed to meet the exhaustion requirement. The Plaintiff does not advance any argument to the contrary with respect Defendants Bush, Fontaine, Holmes or Padro. Accordingly, the motion for summary judgment is granted as to Defendants Franceschi, Bush, Fontaine, Holmes, Padro and Naqvi. *See* 42 U.S.C. § 1997e(a).

*Qualified Immunity*

In view of the Court's holding above, the Court addresses the issue of qualified immunity only as it relates to the remaining defendants, Nurses Jackson and Zukowska.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

---

[1] The Plaintiff avers that, although not expressly named in the CN 9602 form, Dr. Naqvi should nevertheless be imputed into the complaint against Zukowska, by virtue of her "reliance" on him. However, the Plaintiff offers no authority for this argument and to the extent it is a "special circumstance" which should excuse exhaustion, such an argument is precluded under *Ross*.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations and citations omitted). The Court has the discretion to determine the order in which it will address the inquiries required when assessing the applicability of qualified immunity. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson* 555 U.S. at 236).

A right is clearly established if, "at the time of the challenged conduct ... every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*[2]

In addition, qualified immunity protects state actors when it was objectively reasonable for the state actor to believe that his conduct did not violate a clearly established right. *Manganiello v. City of New York,* 612 F. 3d 149, 165 (2d Cir. 2010). "If a reasonable officer might not have known for certain that the conduct was unlawful – then the officer is immune from liability." *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1867 (2017). Therefore, the question this Court first asks is whether it was objectively reasonable for Defendants Jackson and Zukowska to believe their conduct was not unlawful at the time. *Simpson v. City of New York*, 793 F.3d 259, 268 (2d Cir. 2015).

---

[2] "[A] broad general proposition" does not constitute a clearly established right. *Reichle v. Howards*, 566 U.S. 658, 665 (2012). The constitutional right allegedly violated must be established "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Id.* (quoting *Anderson*, 483 U.S. at 640). Recently, the Supreme Court addressed the issue of qualified immunity and stated that "it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742). "As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case." *Id.* (citing *Anderson*, 483 U.S. at 640).

The accidental administration of incorrect medication does not give rise to an Eighth Amendment violation. *See Rodriguez v. Correct Care Solutions, L.L.C.,* No. 11 CIV. 2285 PKC FM, 2012 WL 811515, at *1, *3 (S.D.N.Y. Mar. 8, 2012) (administration of another inmate's medicine may have been negligent but if done accidentally, it cannot be the basis for a deliberate indifference claim). The Second Circuit has repeatedly held that medical negligence and/or a brief delay in treatment falls short of a Constitutional violation. *See Church v. Hegstrom*, 416 F.2d 449, 450 (2d Cir. 1969) ("Mere negligence in giving or failing to supply medical treatment alone will not suffice[.]"); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a Constitutional claim."); *Johnson v. Wright,* 477 F.Supp.2d 572, 576 (W.E.N.Y. 2007) ("That plaintiff may have preferred a more aggressive course of treatment, or more prompt surgery, does not show that defendants acted wantonly with the purpose of causing him pain."); *Demata v. N.Y. State Corr. Dept. of Health Servs.,* No. 99-0066, 198 F.3d 233 (Table), 1999 WL 753142, at *2 (2d Cir. September 17, 1999) (a delay in providing necessary medical care may rise to the level of a constitutional violation, but the Second Circuit has reserved such a classification for cases involving deliberate delay of treatment as a form of punishment, disregard for a life-threatening and fast degenerating condition, and extended delay of a major surgery) (collecting cases).

Indeed, to establish an Eighth Amendment violation, the conduct complained of must "shock the conscience or constitute a barbarous act." *McCloud v. Delaney,* 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing *United States ex rel. Hyde v. McGinnis,* 429 F.2d 864 (2d Cir. 1970). In this context, the Plaintiff "must prove that the Defendants had a culpable state of mind and intended to wantonly inflict pain." *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir. 1992), *cert denied*, 506 U.S. 1040 (1992).

As set forth above, Nurse Jackson mistook the Plaintiff for a different inmate, informed the Plaintiff that he would be receiving his final dosage of medication, and administered two packets of suboxone. The Plaintiff admits to "voluntarily open[ing] his mouth and lift[ing] up his tongue without prompting," affirming Nurse Jackson's belief that he was the correct inmate. Admittedly, Nurse Jackson accidentally administered the suboxone to the Plaintiff. Upon being told by the Plaintiff that he was not due for any medication, Nurse Jackson discovered her mistake. Thereafter, she immediately notified her supervisor, Defendant Nurse Zukowski. Plaintiff admits that Nurse Jackson was "apologetic" toward the Plaintiff. He further admits that Nurse Jackson "did not mistreat the plaintiff, answered his questions, notified her supervisor of what happened and followed up with the plaintiff later that morning." Under these circumstances, an objectively reasonable nurse in Nurse Jackson's position would have believed she was acting lawfully and not in violation of the Plaintiff's rights.[3]

When Nurse Jackson advised her supervisor, Nurse Zukowska, that she had accidentally administered the suboxone to the Plaintiff, Nurse Zukowska met with the Plaintiff, reviewed his medical file, and called the on-call physician, Dr. Naqvi. Nurse Zukowska provided Dr. Naqvi with the information in the file. Based upon that information, Dr. Naqvi determined that no additional medical orders were necessary. Nurse Zukowska followed Dr. Naqvi's instructions. Several hours later, Nurse Zukowska visited the Plaintiff in his housing unit. He spoke with her but he rebuffed her efforts to take his vital signs, asking to see a "real doctor." When Nurse Zukowska explained to the Plaintiff that if his vital signs were abnormal, she would take him to the doctor, he remained steadfast in his refusal. Under these circumstances, an objectively

---

[3] These same undisputed facts also preclude any determination that Nurse Jackson was deliberately indifferent to the Plaintiff's serious medical needs in violation of his Eighth Amendment rights.

reasonable nurse in Nurse Zukowska's position would have believed she was acting lawfully and not in violation of the Plaintiff's rights.[4]

The Plaintiff did not offer any analysis or argument that the doctrine of qualified immunity is not applicable to these facts. Viewing these Defendants' conduct through the lens of the Eighth Amendment jurisprudence set forth above, it is clear that they are entitled to qualified immunity as a matter of law. The motion for summary judgment is granted as to Defendants Jackson and Zukowska.

For the foregoing reasons, the Defendants' motion for summary judgment is GRANTED as to all Defendants.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of January 2019.

> */s/ Kari A. Dooley*
> KARI A. DOOLEY
> UNITED STATES DISTRICT JUDGE

---

[4] These same undisputed facts also preclude any determination that Nurse Zukowska was deliberately indifferent to the Plaintiff's serious medical needs in violation of his Eighth Amendment rights.